Stephanie L. Cooper, Esquire
Nevada Bar No. 5919
THE COOPER CASTLE LAW FIRM
f/k/a THE COOPER CHRISTENSEN LAW FIRM, LLP
820 South Valley View Blvd.
Las Vegas, NV 89107
(702) 435-4175/(702) 435 4181 (facsimile)
7964.30019

**ECF filed on:**

JUN 1 5 2007

Attorney for Secured Creditor
People's Choice Home Loans, Inc.
(1st Deed of Trust)

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA (LAS VEGAS)

| | | |
|---|---|---|
| **IN RE Traci Nichal Turner** | ) | CHAPTER 11 |
| | ) | BANKRUPTCY NO: 06-13358-MKN |
| | ) | DATE:  July 9, 2007 |
| **Debtor.** | ) | TIME:  1:30 p.m. |
| | ) | MOTION NO: |
| | ) | |
| | ) | |
| | ) | |
| _____) | | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

### I.    Introduction

COMES NOW, People's Choice Home Loans, Inc. ("Movant" hereinafter) and moves this court for an order terminating the automatic stay allowing Movant to proceed with and complete any and all contractual and/or statutory remedies incident to its security interests held in real property commonly described as **1952 NAPOLEON DRIVE LAS VEGAS, NV 89156** ("Property" hereinafter) and legally described in the Deed of Trust.

### II.    Parties in Interest

On or about September 23, 2005, Traci Nichal Turner executed a note in the original principal amount of $496,000.00.

The indebtedness under the Note is secured by a first Deed of Trust recorded against the

1  Property. A true and correct copy of the recorded Deed of Trust is attached hereto as **Exhibit**

2  **"B"** and are incorporated herein by reference.

3      Traci Nichal Turner ("Debtor" hereinafter) filed for protection under Chapter 11 of Title

4  11 of the United States Code on November 13, 2006 as case number 06-13358-MKN.

5  ### III.    Estimate of Obligation

6      The approximate amount owed under the terms of the note is $551,271.08. This total is

7  an approximation of the lien, including principal balance plus accrued interest, late charges, and

8  other fees and costs. This estimate is provided only for the purposes of this motion and cannot

9  be relief upon for any other purpose, including tender of payoff. An exact, itemized payoff figure

10  will be obtained from Movant upon written request to counsel or Movant.

11  ### IV.    Value of the Property and Additional Liens

12      The Property has been valued at $610,000.00 in Debtor's Schedules. A true and correct

13  copy of Debtor's Schedules A and D are attached hereto as Exhibit "C" and are incorporated

14  herein by reference. The Property is also encumbered by the following second lien in favor of

15  People's Choice, with an approximate outstanding balance on the loan obligation in the sum of

16  $136,588.24. People's Choice obtained relief from the automatic stay with respect to its second

17  

18  deed of trust on or about February 8, 2007.

19  ### V.    Payment Default

20  

21      Pursuant to LBR 4001(a), on May 17, 2007, Debtor's counsel was advised of the

22  Debtor's default. A true and correct copy of the letter sent by facsimile transmission to Debtor's

23  counsel and the Debtor is attached hereto as **Exhibit "D"** and incorporated herein by reference.

24      As of the date of preparation of this motion, the Debtor has failed to timely file a Plan and

25  Disclosure Statement pursuant to 11 U.S.C Sec. 1121 and loan is in default and the following is

26  due and owing:

27  / / /

28  

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

| | |
|---|---|
| UNPAID PRINCIPAL BALANCE: | $495,292.29 |
| 13 Regular monthly payment for May 1, 2006 through May 1, 2007 @ $3,711.42 each | $48,248.46 |
| 13 Late Charge for May 2006 through May 2007 | $1,670.13 |
| Miscellaneous Fees (NSF Fee, BPO fee, Property Inspection Fee, Skip Trace Fee) | $25.00 |
| Escrow/Impound Overdraft | $3,322.20 |
| Recoverable Corporate Advance | $1,563.00 |
| Bankruptcy Fees & Costs | $1,150.00 |
| **Total:** | **$551,271.08** |

The figure above does not include any payments received after the date of this motion was prepared or payments that have since come due.

### VI.    Authority

Under 11 U.S.C. 362(d)(1), on request of a party of interest, the Court shall terminate, annul, modify or condition the stay for "cause". In the case at bar, Movant's interest in the Property is not adequately protected. Debtor has failed to make the thirteen (13) Payments to Movant. The total liens on the Property exceed the value of the Property.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.   Relief from the stay, as to the Debtor and the bankruptcy estate, allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.   That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.   That the ten (10) day stay under Bankruptcy Rule 4001(a)(3) be waived.

4.   In the alternative, an Order requiring Debtor to reinstate and maintain all obligations due under all of the trust deeds encumbering the Property and further allowing Movant with the

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

remedies to proceed with foreclosure should the Debtor fail to maintain her payments.

5. For reasonable attorneys' fees and cost.

6. For such other relief as the Court deems proper.

Date: June 15th, 2007

Respectfully submitted by:

_____

STEPHANIE L. COOPER, ESQ.
Nevada Bar No. 5919
The Cooper Castle Law Firm fka The
Cooper Christensen Law Firm, LLP,
Attorneys for Movant

## **SECTION 362 INFORMATION SHEET**

TRACI TURNER

DEBTOR

06-13358-MKN

Bankruptcy Case No.

Motion No.

People's Choice Home Loans, Inc.

MOVANT/CREDITOR

11

CHAPTER FILED

1952 Napoleon Drive, Las Vegas, NV 89156

Property Address

NOTICE WAS SERVED ON:        Debtor: _X_ ;    Debtor's Counsel: _X_ ; Trustee: _X_

DATE OF SERVICE: _____

EXHIBIT A

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY OF LIENS: | The EXTENT and PRIORITY OF LIENS: |
| 1st  $551,271.08<br>2nd $136,588.24<br>3rd<br>Total Encumbrances: $687,859.32 | 1st<br>2nd<br>3rd<br>Total Encumbrances: |
| APPRAISAL OR OPINION AS TO VALUE<br>Estimated property value at $610,000.00 as indicated in debtor's voluntary petition-Schedule A and D. | APPRAISAL OR OPINION AS TO VALUE |

| The Undersigned hereby certifies compliance with Local Rule 4001 as indicted by the attached letter and confirmation. | |
|---|---|

| TERMS OF MOVANT'S CONTRACT<br>WITH THE DEBTOR<br>Amount of Note: $495,292.29<br>Interest Rate: 8.699%<br>Duration: 30 yrs<br>Payment per Month: $ $3711.42<br>Date of Default: May 1, 2007<br>Amount in Arrears: $55,978.79<br><br>Signature: _____ | DEBTOR'S OFFER OF ADEQUATE<br>PROTECTION for the MOVANT<br><br><br><br><br>SPECIAL CIRCUMSTANCES:<br><br>Signature: _____ |

# EXHIBIT "B"

7904. 20107

"I hereby certify that this is a true, correct, and complete copy of the original, which has been submitted for recordation"

Loan Number 10256403

## ADJUSTABLE RATE NOTE
(LIBOR Six- Month Index (As Published In The Wall Street Journal)-Rate Caps)
40-Year Initial Amortization Rate (Due In 30 Years)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

09/23/2005              IRVINE                CALIFORNIA
[Date]                  [City]                [State]

1952 NAPOLEON DRIVE, LAS VEGAS, NEVADA 89156
[Property Address]

1.    **BORROWER'S PROMISE TO PAY**
      In return for a loan that I have received, I promise to pay U.S. $496,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is PEOPLE'S CHOICE HOME LOAN, INC. a WYOMING CORPORATION

      I will make all payments under this Note in the form cash, check or money order.

      I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

2.    **INTEREST**
      Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.699%.  The interest rate I will pay may change in accordance with Section 4 of this Note.

      The interest rate required by Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.    **PAYMENTS**
      **(A)    Time and Place of Payments**
      I will pay Principal and interest by making a payment every month.

      I will make my monthly payments on the 1st of each month beginning on November 1, 2005 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If on October 1, 2035, I still owe on amounts under this Note I will pay those amounts in full on that date, which is called the "Maturity Date".

      I will make my monthly payments at P.O. Box 52678, Irvine, CA 92619 or at a different place if required by the Note Holder.

      **(B)    Amount of My Initial Monthly Payments**
      My monthly payments of principal and interest will each be in the amount of U.S. $3,711.42 , for the first 24 months (two years).  From the following month through the Maturity Date, the interest rate and, therefore, the monthly payment that I will pay may change in accordance with Section 4 of the Note. During the first 120 months (including the initial (24-month period), my monthly payments will be 40-Year Amortizing Payments, as defined in Section 4(C). After that time, my monthly payments will be Fully Amortizing Payments, as defined in Section 4(C). The Note Holder will notify me before the date of a change in my monthly payment.

      **(C)    Monthly Payment Changes**
      Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

Page 1 of 4

ADJNOTE40-20_1                                                                              03/05

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)    Change Date(s)**

The interest rate I will pay may change on the 1st day of October, 2007 and every 6th month(s) thereafter.  Each date on which my interest rate could change is called a ("Change Date").

**(B)    The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. The most recent Index figure available as of the  date 45 days before each Change Date  is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)    Calculation of Changes**

For each Change Date, the Note Holder will calculate my new interest rate by adding two percentage points (2.000%) to the Current Index. The Note Holder will then round the resulting sum to the nearest one eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

For each Change Date during the first 120 months of the term of this Note, the Note Holder will determine the amount of the monthly payments ("40-Year Amortizing Payments") that would be sufficient to repay the unpaid Principal that I owe in full within 40 years after the date of the execution of the Security Instrument at my new interest rate in substantially equal payments. For each Change Date after that time, the Note Holder will determine the amount of the monthly payment ("Fully Amortizing Payments") that would be sufficient to repay the remaining unpaid Principal that I owe in full on the Maturity Date at my new interest rate in substantially equal payments.

**Notwithstanding the Initial 40-year amortization rate, I understand that I must pay all amounts that I owe under this Note in full on or before the Maturity Date, which is approximately 30 years from the date of this Note.**

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.699% or less than 8.699% .  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than one percentage point(s) (1.000%) from the rate of interest I have been paying for the preceding 6 months.

My interest rate will never be greater than 14.699% .   My interest rate will never be less than  8.699%.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only before it is due is known as a "Prepayment".  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments then due under this Note.

The Note Holder will use my Prepayment to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial prepayment may be offset by an increase in the interest rate.

ADJNOTE40-20_2                                                                                        03/05

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)    Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)    Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)    Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)    No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)    Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

**8.    GIVING OF NOTICES**

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

ADJNOTE40-20_3

03/05

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the None Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.  Some of those conditions read as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if : (a)Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of any breach of any covenant or agreement is this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____ (Seal)         _____ (Seal)
TRACI N. TURNER    -Borrower                    -Borrower

_____ (Seal)         _____ (Seal)
           -Borrower                   -Borrower

_____ (Seal)         _____ (Seal)
           -Borrower                   -Borrower

_____ (Seal)         _____ (Seal)
           -Borrower                   -Borrower

[Sign Original Only]

ADJNOTE40-20_4                                                      03/05

79U4. 20167

"hereby certify that this is a true,
correct, and complete copy of
the original, which has been
submitted for recordation"

Assessor's Parcel Number:
140-23-712-012
Return To: People's Choice Home Loan,
Inc.
7515 IRVINE CENTER DR., IRVINE, CA
92618

Prepared By: LSI, A FIDELITY NATIONAL
FINANCIAL
2550 REDHILL AVENUE, SANTA ANA, CA
92705
Recording Requested By: PEOPLE'S CHOICE
HOME LOAN, INC.

———————— [Space Above This Line For Recording Data] ————————

## DEED OF TRUST

MIN 100273900102564035

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.
(A) "Security Instrument" means this document, which is dated September 23, 2005
together with all Riders to this document.
(B) "Borrower" is TRACI N. TURNER  AN UNMARRIED WOMAN

Borrower is the trustor under this Security Instrument.
(C) "Lender" is PEOPLE'S CHOICE HOME LOAN, INC., a WYOMING CORPORATION

Lender is a CORPORATION
organized and existing under the laws of WYOMING
10256403
NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3029  1/01
WITH MERS
-6A(NV) (0307)
Page 1 of 15          Initials:
VMP Mortgage Solutions (800)521-7291

Lender's address is 7515 IRVINE CENTER DR., IRVINE, CA  92618

(D) "Trustee" is F.C.I., A California Corporation, 8101 Kaiser Blvd., Suite #360 Anaheim Hills, CA 92808

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated September 23, 2005
The Note states that Borrower owes Lender FOUR HUNDRED NINETY-SIX THOUSAND AND 00/100
Dollars
(U.S. $496,000.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

10256403

Initials: ___

-6A(NV) (0307)                          Page 2 of 15                          Form 3029  1/01

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                    [Type of Recording Jurisdiction]
of CLARK                                                      [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
'A'

Parcel ID Number: 140-23-712-012                                        which currently has the address of
1952 NAPOLEON DRIVE                                                                          [Street]
LAS VEGAS                                                              [City], Nevada 89156          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

10256403                                                                    Initials: ____
-6A(NV) (0307)                              Page 3 of 15                          Form 3029  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          TRACI N. TURNER              -Borrower

_____          _____ (Seal)
                                                                       -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                      -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                      -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                                      -Borrower

10256403
-6A(NV) (0307)                    Page 14 of 15                  Form 3029  1/01

STATE OF NEVADA ☑ *CALIFORNIA*
COUNTY OF SONOMA

This instrument was acknowledged before me on *September 24, 2005* by
TRACI N. TURNER

JAMSHEED R. DESSAI
Commission # 1377334
Notary Public · California
Sonoma County
My Comm. Expires Sep 29, 2006

*Jamsheed R Dessai*
NOTARY PUBLIC

Mail Tax Statements To:

10256403

-6A(NV) (0307)                Page 15 of 15                Initials: JNJ                Form 3029   1/01

Order No. 05-00-51668288-SH - 1668288-49

### EXHIBIT "ONE"

Parcel One:

lot 15 in Block 1 of Sorell Estates Phase II as shown by map thereof on file in book 42 of Plats, page 8 and as amended by Amended Sorell Estates Phase II as recorded in book 45 of Plats, page 97, in the Office of the County Recorder of Clark County, Nevada.

Parcel Two:

Non-exclusive easements for access, ingress, egress, encroachment, support, maintenance, repairs and for other purposes over the common areas and over those portions of the Association Properties comprised of the Recreation Area Easement all as shown, described and limited in the Plan, the Notice and the Declaration.

Assessor's Parcel No: 140-23-712-012

2

# EXHIBIT "C"

In re: TRACI NICHAL TURNER
    Debtor

Case No: 06-13358-mkn

### SCHEDULE A- REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers excercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H","W","J", or "C" in the third column labeled "Husband, Wife, Joint or Community." if the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G-Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a security interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C—Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSB WIFE JOINT COM. | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| 853 Ashford Way Henderson, Nevada | Owner | W | $557,000.00 | $429,000.00 |
| 1952 Napoleon Drive Las Vegas, Nevada | Owner | W | $610,000.00 | 1st Mortgage: $496,000.00 2nd Mortgage: $124,000.00 |
| 5932 Victory Point Street North Las Vegas, Nevada | Owner | W | $314,000.00 | 1st Mortgage: $244,000.00 2nd Mortgage: $61,000.00 |
| | | | $1,481,000.00 | TOTAL |

In re: TRACI NICHAL TURNER
        Debtor

Case No: 06-13358-mkn

### SCHEDULE D— CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and the last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. 112; Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H— Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H," "W," "J," or "C," in the column labeled "Husband, Wife, Joint or Community" (Abbreviated: H,W,J,C).

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is Disputed, place an "X" in the column labeled Disputed. (You may need to place an X in more than one of these three columns.)

Report the total of all claims listed on this Schedule D in the box labeled "Total" on the last sheet of the completed Schedule. Report this total also on the Summary of Schedules.

[ ] Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| Creditor's Name and Mailing Address Including Zip Code And Account Number | C O D E B T O R | H W J C | Date Claim Was Incurred, Nature of Lien, and Description and Value of Property Subject to Lien | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | Amount of Claim Without Deducting Value of Collateral | Unsecured Portion If Any |
|---|---|---|---|---|---|---|---|---|
| Acct No: 0280077854<br>GMAC Mortgage<br>P.O. Box 79135<br>Phoenix, AZ 85062 | | W | 2/2006<br>Deed of Trust<br>853 Ashford Way,<br>Henderson, NV | | | | $443,000 | |
| Acct No: 0010256403<br>Peoples Choice Mortgage<br>P.O. Box 50220<br>Irvine, CA 92619 | | W | 9/2005<br>Deed of Trust<br>1952 Napoleon Drive,<br>Las Vegas, NV | | | | $496,000 | |
| Acct No: 0010261092<br>Peoples Choice Mortgage<br>P.O. Box 50220<br>Irvine, CA 92619 | | W | 9/2005<br>Deed of Trust<br>1952 Napoleon Drive,<br>Las Vegas, NV | | | | $124,000 | |
| Acct No: 1624005<br>Franklin Credit Management Corp.<br>Sky Bank<br>P.O. Box 94953<br>Cleveland, OH 44101 | | W | 11/2004<br>Deed of Trust<br>5932 Victory Point Street<br>North Las Vegas, NV | | | | $241,000 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Acct No: ILN9067481394<br>Sovereign Bank<br>601 Penn Street<br>Reading, PA 19601 | | W | 11/2004<br>Deed of Trust<br>5932 Victory Point Street<br>North Las Vegas, NV | | | $61,000 | |
| Acct No: 265074-01<br>Redwood Credit Union<br>P.O. Box 6104<br>Santa Rosa, CA 95406 | | W | 10/2006<br>Lien<br>Office equipment | | | $9,923 | |
| | | | | | | **$1,374,923.00** | **TOTAL** |

(Report total also on Summary of Schedules)

# EXHIBIT "D"

05/18/2007 07:58 FAX 7142774899          NORTHWEST TRUSTEE                    ☑001

```
                        ********************
                        ***  TX REPORT  ***
                        ********************

        TRANSMISSION OK

        TX/RX NO             1382
        CONNECTION TEL                    17025375736
        CONNECTION ID
        ST. TIME             05/18 07:58
        USAGE T              00'36
        PGS. SENT            1
        RESULT               OK
```

# ROUTH | CRABTREE | OLSEN, PS

505 N. Tustin Avenue, Suite 243
Santa Ana, CA 92705
Telephone (714) 277-4915 ◆ Facsimile (714) 277-4916 ◆ mantonio@rcflegal.com

May 17, 2007

**VIA FACSIMILE TRANSMISSION @ 702-537-5736**

Christopher T Smith
10161 Park Run Drive
Las Vegas, NV 89145

|  |  |
|---|---|
| Case No.: | 06-13358 |
| Case Name: | In re Traci Nichal Turner |
| Our Client: | People's Choice Home Loan, Inc |
| RCO File No.: | 7964.30019 (1st DOT) |

Dear Mr. Smith:

The purpose of this letter is to inform you that your client, Traci Nichal Turner, ("Debtor"), has failed to make her mortgage payments to People's Choice Home Loan, Inc.

In compliance with Local Rule 4001(a), People's Choice Home Loan, Inc hereby gives the Debtor notice of the default and an opportunity to cure. The amount currently due and owing is:

| | |
|---|---|
| Regular monthly payments each at $3,711.42 for May 1, 2006 through May 1, 2007 | $48,248.46 |
| Late Fees each at from May 1, 2006 through May 1, 2007 | $1,670.13 |
| Miscellaneous fees (NSF fee, BPO fee, Property inspection fee, Skip trace fee) | $25.00 |
| Escrow/Impound Overdraft | $3,322.20 |
| Recoverable Corporate Advances | $1,563.00 |
| Total: | **$54,828.79** |

If your client fails to submit these payments to our office within 48 hours of receipt of this

# ROUTH | CRABTREE | OLSEN, PS

505 N. Tustin Avenue, Suite 243
Santa Ana, CA 92705
Telephone (714) 277-4915 ◆ Facsimile (714) 277-4916 ◆ mantonio@rcflegal.com

May 17, 2007

**VIA FACSIMILE TRANSMISSION @ 702-537-5736**

Christopher T Smith
10161 Park Run Drive
Las Vegas, NV 89145

|                |                                   |
|----------------|-----------------------------------|
| Case No.:      | 06-13358                          |
| Case Name:     | In re Traci Nichal Turner         |
| Our Client:    | People's Choice Home Loan, Inc    |
| RCO File No.:  | 7964.30019 (1st DOT)              |

Dear Mr. Smith:

The purpose of this letter is to inform you that your client, Traci Nichal Turner, ("Debtor"), has failed to make her mortgage payments to People's Choice Home Loan, Inc.

In compliance with Local Rule 4001(a), People's Choice Home Loan, Inc hereby gives the Debtor notice of the default and an opportunity to cure.  The amount currently due and owing is:

| | |
|---|---|
| Regular monthly payments each at $3,711.42 for<br>         May 1, 2006 through May 1, 2007 | $48,248.46 |
| Late Fees each at from May 1, 2006 through<br>         May 1, 2007 | $1,670.13 |
| Miscellaneous fees (NSF fee, BPO fee, Property inspection fee,<br>         Skip trace fee) | $25.00 |
| Escrow/Impound Overdraft | $3,322.20 |
| Recoverable Corporate Advances | $1,563.00 |
| Total: | **$54,828.79** |

If your client fails to submit these payments to our office within 48 hours of receipt of this facsimile transmission, or provide proof of receipt of payments to our client, then People's Choice will be forced to immediately file a motion for relief from stay.  Please contact me at the number above if you have any questions.

Very truly yours,

*Marisol Antonio*

Marisol Antonio